UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMAR RANDALL,

          Plaintiff,
                             Case No. 1:24-cv-344

v.
                                     Honorable Robert J. Jonker

HEIDI WASHINGTON et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington and Downy. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's equal protection claims, his claims for injunctive relief, and his Eighth Amendment claim against Defendant Davids related to the failure to intervene in Plaintiff's December 21, 2022, suicide attempt.

**Discussion**

**I.       Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues MDOC Director Heidi Washington, Mental Health Director David Downy, Warden John Davids, Assistant Deputy Warden James Dunigan, Mental Health Chief Psychologist Mr. David Maranka, Resident Unit Manager Mr. Unknown Luther, Psychologist Mr. Unknown Bookie, and Prison Counselor Mr. Unknown Smith in their individual and official capacities. (ECF No. 1, PageID.6-7.)

Plaintiff alleges that on March 15, 2022, he was transferred to ICF and was placed in the Start Program, which is meant to treat prisoners with a mental illness. (*Id.*, PageID.9-10.) Plaintiff's allegation regarding the purpose of the program is belied by an MDOC document Plaintiff attaches to his complaint.[1] The Court will generally accept as true the statements that Plaintiff makes in the documents he has attached to the complaint. The Court will generally not accept as true statements made by others in such documents. But, "[w]hen a document attached to a complaint contradicts the allegations, the document trumps the allegations . . .[if the] document

---

[1] The Court may consider documents that are attached to a pro se complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g., Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage." (citations omitted)).

. . . 'utterly discredit[s]' the allegations." *In re Flint Water Cases*, 960 F.3d 303, 329 (6th Cir. 2020). The Court concludes that Plaintiff's statement of the purpose of the Start Program is utterly discredited by the MDOC's written description of the program. Indeed, only the MDOC can state the purpose of the Start Program in that it is the MDOC's program. Accordingly, the Court accepts as true the statement of the Start Program's mission set forth in the attached document:

> To provide a secure general population alternative to administrative segregation while providing programming and other structured and unstructured out of cell activities based upon the prisoner's positive adjustment, with the goal of reintegration into traditional general population.

(ECF No. 1-2, PageID.23.) Certainly, the target population includes prisoners with serious mental illnesses, but only if those prisoners' behavior would warrant reclassification to administrative segregation. (*Id.*)

Plaintiff states that he believes that the Start Program is merely solitary confinement targeted towards mentally ill prisoners. (*Id.*) Plaintiff states that as part of the program, he is required to see a panel of Security Classification Committee (SCC) members who monitor Plaintiff's progress in the program. Plaintiff alleges that between August and December of 2022, Plaintiff noticed that he was receiving little to no mental health treatment and was spending between twenty-two and twenty-four hours a day locked inside of his cell. Plaintiff states that while in the Start Program, he was denied any meaningful human contact. (*Id.*, PageID.10.)

Plaintiff states that he began to have thoughts of killing himself or others, extreme anxiety and depression. Plaintiff states that he also experienced psychotic episodes, which resulted in misconduct tickets and suicide attempts. (*Id.*, PageID.11.) Plaintiff states that when he met with SCC members, including Defendants Dunigan, Luther, Maranka, Bookie, and Smith, he told them about his negative thoughts and behaviors. (*Id.*)

Plaintiff told the members that only being able to speak to his psychologist once a month, being confined to his cell for nearly twenty-four hours a day, only being allowed out in handcuffs, and being locked inside a cage whenever he was allowed out of his cell was causing his suicidal and homicidal thoughts. (*Id.*, PageID.12.) Plaintiff states that the SCC members responded that Plaintiff was "faking" and trying to manipulate the program, and that they were running the Start Program the way that it had been outlined in the rules. (*Id.*) Plaintiff argued that he had a copy of the rules and that they were not being followed. (*Id.*) Defendants responded that "people in 'Lansing' . . . gave them permission to run the Start Program at its present incarnation." (*Id.*, PageID.13.) Plaintiff asserts that SCC meetings always ended without anyone asking about his state of mind. (*Id.*)

Plaintiff asserts that Defendants Washington, Downy, Dunigan, Maranka, Luther, Bookie, and Smith are liable for knowingly subjecting Plaintiff and other mentally ill prisoners to the debilitating conditions in the Start Program. (*Id.*, PageID.14.) Plaintiff alleges that on December 21, 2022, between 8:00 am and 11:00 am, he told Defendant Smith that the isolation and lack of treatment were causing him to feel suicidal and that Defendant Smith needed to loosen up the restrictions or release Plaintiff from the Start Program. (*Id.*) Defendant Smith responded that Defendant Davids "knew about [Plaintiff's] suicidal thoughts . . . and had ordered Defendants [Dunigan, Maranka, Luther, Bookie, and Smith] to run the 'Start Program' at its present incarnation." (*Id.*) Defendant Smith also stated that Plaintiff could not be released from the program because he had a mental illness. (*Id.*)

Plaintiff then showed Defendant Smith three bottles of aspirin and said that if he was not released from the Start Program, he was going to take all three bottles of aspirin at once in order to commit suicide. (*Id.*, PageID.15.) Defendant Smith left Plaintiff in his cell after stating that he

4

did not care if Plaintiff committed suicide and that he was tired of Plaintiff's "retarded ass anyway." (*Id.*) Plaintiff then took all three bottles of aspirin and "laid down to die." (*Id.*) Plaintiff states that he blacked out but woke up some time later that day. Plaintiff states that none of the prison staff members checked on him during or after this suicide attempt, nor did they investigate his mental or physical health. Plaintiff asserts that Defendant Smith is liable for failing to secure medical assistance when Plaintiff threatened to commit suicide. (*Id.*)

Plaintiff states that he is seeking an injunction shutting down the Start Program. Plaintiff is also seeking compensatory and punitive damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Eighth Amendment

#### 1.    Claim Regarding Continued Detention in Segregation-Like Conditions

The Court construes Plaintiff's amended complaint to raise an Eighth Amendment claim regarding his confinement in the Start Now Program.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. Further, the Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1,

9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim regarding the conditions of confinement, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

In his complaint, Plaintiff asserts that the Start Program is an unconstitutional solitary confinement/punishment which targets mentally ill prisoners like himself. (ECF No. 1, PageID.9.) Plaintiff alleges that while in the Start Program, he was locked inside his cell seven days a week, for twenty-two to twenty-four hours a day and that he received little to no mental health treatment. (*Id.*, PageID.10.) Plaintiff states that he was only allowed to speak to his psychologist once a month and that when he was allowed out of his cell, he was taken out in handcuffs and was locked in a cage. (*Id.*, PageID.12.) Plaintiff asserts that this aggravated his mental illness and caused him to experience suicidal and homicidal thoughts, and that he suffered from psychotic episodes and suicide attempts. (*Id.*, PageID.11-14.) Plaintiff alleges that he ultimately attempted to commit suicide by overdosing on three bottles of aspirin. (*Id.*, PageID.14.)

Plaintiff claims that he has talked with Defendants Dunigan, Luther, Maranka, Bookie, and Smith at the Start SCC meetings and told them of his worsening symptoms and asked to have restrictions loosened or to be removed from the program. (*Id.*, PageID.11-12.) However, Plaintiff claims that these Defendants accused him of faking and told him that the Start Program would continue to be run in its current incarnation. (*Id.*)

7

Plaintiff makes a conclusory assertion that Defendants Washington, Downy, Dunigan, Maranka, Luther, Bookie, and Smith knew that the Start Program was dangerous to mentally ill prisoners and are therefore liable for subjecting Plaintiff to the debilitating conditions of the program. (*Id.*, PageID.13-14.) However, as to Defendants Washington and Downy, Plaintiff does not allege that they were involved in the decision to keep Plaintiff in the program. Instead, Plaintiff's allegations suggest that as SCC members who monitor Plaintiff's progress in the program, Defendants Dunigan, Maranka, Luther, Bookie, and Smith were involved in that decision. Plaintiff also states that Defendant Smith told him that Defendant Davids was aware of Plaintiff's suicidal thoughts and had instructed that the program continue in its current incarnation. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Because Plaintiff does not allege facts suggesting that Defendants Washington or Downy, had any active involvement with Plaintiff's detention in the Start Program, his Eighth Amendment damages claims against Defendants Washington and Downy will be dismissed. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

As to Defendants Davids, Dunigan, Maranka, Luther, Bookie, and Smith, Plaintiff alleges that he has serious mental health issues and was experiencing suicidal and homicidal thinking, psychotic episodes, and suicide attempts, and that these Defendants were aware of this, but that they continued to house Plaintiff in a restrictive segregation setting for a period of at least nine months and that Plaintiff ultimately attempted suicide by taking three bottles of aspirin. Although Plaintiff has by no means proven his Eighth Amendment claims, at this stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will

8

not dismiss Plaintiff's Eighth Amendment claim regarding Plaintiff's continued detention in segregation-like conditions against Defendants Davids, Dunigan, Maranka, Luther, Bookie, and Smith. *Cf. J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 719 (6th Cir. 2020) ("Placement of a mentally-ill detainee in solitary confinement 'raises a genuine concern that the negative psychological effects of his segregation will drive him to self-harm.'" (citation omitted)); *Snider v. Saad*, No. 1:20-cv-963, 2020 WL 6737432, at *7–8 (W.D. Mich. Nov. 17, 2020) (concluding that the prisoner-plaintiff's Eighth Amendment claim against members of the SCC regarding his conditions of confinement, which he alleged were more severe than typical conditions of segregation, and which he alleged had a particularly "deleterious impact on him" due to his mental illness could not be dismissed on initial review).

### 2. Deliberate indifference to risk of suicide

The Eighth Amendment is also violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

9

Here, Plaintiff alleges that he had a history of suicide attempts and suicidal ideation. Plaintiff states that on December 21, 2022, he showed Defendant Smith three bottles of aspirin and stated that if not released from the Start Program, Plaintiff was going to commit suicide by taking all three bottles of aspirin. Plaintiff states that Defendant Smith told him he did not care because he was "tired of [Plaintiff's] retarded ass anyway," and took no action to prevent Plaintiff from self-harm. (ECF No. 1, PageID.15.)

> The Sixth Circuit has held that "[a]n inmate's psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies." *Troutman v. Louisville Metro Dep't of Corrs.*, 979 F.3d 472, 482 (6th Cir. 2020) (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)). With respect to suicidal tendencies, the Sixth Circuit has stated: "A plaintiff meets the objective prong of the [deliberate indifference] analysis by showing that the inmate *showed suicidal tendencies* during the period of detention or that he '*posed a strong likelihood of another suicide attempt.*'" *Id.* at 483 (emphasis added) (quoting *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006); *Linden v. Washtenaw Cnty.*, 167 F. App'x 410, 416 (6th Cir. 2006)). This is because "[s]uicide is a difficult event to predict and prevent and often occurs without warning." *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005).
>
> The Sixth Circuit has concluded that steps to prevent suicide are constitutionally required only in cases where "it [i]s 'obvious that there [i]s a 'strong likelihood that [the] inmate w[ill] attempt suicide[.]'" *Troutman*, 979 F.3d at 483 (quoting *Downard for Estate of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020)). "This is a high bar[.]" *Downard*, 968 F.3d at 601. Thus, the subjective component "typically requires evidence that the inmate was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm." *Id.* (citing *Grabow v. Cnty. of Macomb*, 580 F. App'x 300, 309 (6th Cir. 2014)). Moreover, "a prison official's duty to recognize an inmate's risk of committing suicide has a temporal component." *Andrews v. Wayne Cnty., Mich.*, 957 F.3d 714, 722 (6th Cir. 2020). To be held liable, "a prison official must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Linden*, 167 F. App'x at 421 (quoting *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000)).

*Gresham v. Awomolo*, No. 1:24-CV-242, 2024 WL 1326640, at *11 (W.D. Mich. Mar. 28, 2024).

The Court concludes that at this point in the litigation, Plaintiff has alleged sufficient facts to support an Eighth Amendment claim against Defendant Smith for failing to intervene when informed of Plaintiff's plan to commit suicide.

10

### 3. Supervising Liability

Plaintiff cites *Peatross v. Memphis*, 818 F.3d 233, 242 (6th Cir. 2016), for the proposition that an official may be liable under supervisory liability theory where the execution of his job duties causes injury and asserts that Defendant Davids "is liable for ordering [the SCC] to subject [Plaintiff] to the debilitating conditions of the 'Start Program' knowing that they were causing Plaintiff' to [feel] suicidal." (ECF No. 1, PageID.16.)

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that

11

> the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Davids encouraged or condoned the conduct of Defendant Smith with regard to his disregard to Plaintiff's stated plan to commit suicide on December 21, 2022. Plaintiff alleges that, according to Defendant Smith, Defendant Davids would not release Plaintiff from the Start Program despite his suicidal tendencies. However, Plaintiff fails to allege any facts at all indicating that Defendant Smith was aware of Plaintiff's specific intention to commit suicide on December 21, 2022, and that he authorized or condoned Defendant Smith's conduct toward Plaintiff on that date. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Davids was personally involved in the events surrounding Plaintiff's December 21, 2022, alleged suicide attempt. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff fails to state an Eighth Amendment claim against Defendant Davids for failing to intervene and prevent Plaintiff from attempting suicide.

**B.    Equal Protection**

Liberally construing Plaintiff's complaint, the Court notes that he appears to be asserting an equal protection claim based on his allegations that he was subjected to unconstitutional

conditions in the Start Program in contrast to prisoners in the general population because of his mental illness.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff fails to allege any facts showing that he has been treated differently from other prisoners who are similarly situated in all relevant respects. Indeed, Plaintiff fails to allege any facts to show that general population inmates were similar in all relevant aspects. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

### C. Request for injunctive relief

Regarding Plaintiff's request for injunctive relief, the Court notes that Plaintiff currently resides at LRF. Therefore, Plaintiff is no longer detained in the Start Unit at ICF. The Sixth Circuit has held that transfer to another prison facility moots prisoner injunctive and declaratory claims. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. Sept. 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). These Sixth Circuit opinions contain only brief explanations of the reasoning supporting this rule. Underlying the rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-96.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington and Downy will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants:

Plaintiff's equal protection claims, his claims for injunctive relief, and his Eighth Amendment claim against Defendant Davids related to the failure to intervene in Plaintiff's December 21, 2022, suicide attempt. Plaintiff's Eighth Amendment claims regarding conditions in the Start Unit at ICF against Defendants Davids, Dunigan, Maranka, Luther, Bookie, and Smith, and his claim against Defendant Smith for failing to protect him from attempting suicide on December 21, 2022, remain in the case.

    An order consistent with this opinion will be entered.


Dated:    June 25, 2024               /s/ Robert J. Jonker
                                                               Robert J. Jonker
                                                               United States District Judge