UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAR RANDALL #412000,

        Plaintiff,                                        Hon. Robert J. Jonker

v.                                                      Case No. 1:24-cv-344

HEIDI WASHINGTON, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on Defendants' Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 19.) Plaintiff has failed to respond to Defendants' motion within the time permitted by Western District of Michigan Local Civil Rule 7.2(c).[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **grant** the motion, **dismiss** Plaintiff's remaining claims **without prejudice** for lack of exhaustion, and terminate this action.

Plaintiff, who is currently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison, filed a complaint against several MDOC employees on April 4, 2024, alleging claims pursuant to 42 U.S.C. § 1983 based on events that occurred at the Ionia Correctional Facility (ICF) while Plaintiff was housed there from March through December 2022. Following the Court's initial review pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c), Plaintiff's remaining claims are his Eighth Amendment claims regarding

---

[1] Although Plaintiff is proceeding pro se, he is still expected to comply with the applicable court rules. *See Strohmeyer v. Chase Bank USA, N.A.*, No. 3:17-cv-443, 2018 WL 2669991, at *2 (E.D. Tenn. June 4, 2018) ("It is correct that pro se parties are expected to comply with the rules of procedure just as parties represented by counsel must do."); *Jones v. Graley,* No. 2:05-cv-773, 2006 WL 1697637, at *1 (S.D. Ohio June 20, 2006) (although federal courts have treated pro se litigants more leniently, they "are still expected to comply with the procedural rules of the court").

conditions in the Start Unit at ICF against Defendants Davids, Dunigan, Maranka, Luther, Bookie, and Smith and his claim against Defendant Smith for failing to protect him from attempting suicide on December 21, 2022. (ECF No. 7 at PageID.75.)

The Court previously summarized Plaintiff's complaint allegations pertaining to his remaining claims as follows:

> Plaintiff alleges that on March 15, 2022, he was transferred to ICF and was placed in the Start Program, which is meant to treat prisoners with a mental illness. ([ECF No. 1,] PageID.9-10.) . . . .
>
> . . . .
>
> Plaintiff states that he believes that the Start Program is merely solitary confinement targeted towards mentally ill prisoners. (*Id.*) Plaintiff states that as part of the program, he is required to see a panel of Security Classification Committee (SCC) members who monitor Plaintiff's progress in the program. Plaintiff alleges that between August and December of 2022, Plaintiff noticed that he was receiving little to no mental health treatment and was spending between twenty-two and twenty-four hours a day locked inside of his cell. Plaintiff states that while in the Start Program, he was denied any meaningful human contact. (*Id.*, PageID.10.)
>
> Plaintiff states that he began to have thoughts of killing himself or others, extreme anxiety and depression. Plaintiff states that he also experienced psychotic episodes, which resulted in misconduct tickets and suicide attempts. (*Id.*, PageID.11.) Plaintiff states that when he met with SCC members, including Defendants Dunigan, Luther, Maranka, Bookie, and Smith, he told them about his negative thoughts and behaviors. (*Id.*)
>
> Plaintiff told the members that only being able to speak to his psychologist once a month, being confined to his cell for nearly twenty-four hours a day, only being allowed out in handcuffs, and being locked inside a cage whenever he was allowed out of his cell was causing his suicidal and homicidal thoughts. (*Id.*, PageID.12.) Plaintiff states that the SCC members responded that Plaintiff was "faking" and trying to manipulate the program, and that they were running the Start Program the way that it had been outlined in the rules. (*Id.*) Plaintiff argued that he had a copy of the rules and that they were not being followed. (*Id.*) Defendants responded that "people in 'Lansing' . . . gave them permission to run the Start Program at its present incarnation." (*Id.*, PageID.13.) Plaintiff asserts that SCC meetings always ended without anyone asking about his state of mind. (*Id.*)
>
> Plaintiff asserts that Defendants Washington, Downy, Dunigan, Maranka, Luther, Bookie, and Smith are liable for knowingly subjecting Plaintiff and other mentally ill prisoners to the debilitating conditions in the Start Program. (*Id.*, PageID.14.)

> Plaintiff alleges that on December 21, 2022, between 8:00 am and 11:00 am, he told Defendant Smith that the isolation and lack of treatment were causing him to feel suicidal and that Defendant Smith needed to loosen up the restrictions or release Plaintiff from the Start Program. (*Id.*) Defendant Smith responded that Defendant Davids "knew about [Plaintiff's] suicidal thoughts . . . and had ordered Defendants [Dunigan, Maranka, Luther, Bookie, and Smith] to run the 'Start Program' at its present incarnation." (*Id.*) Defendant Smith also stated that Plaintiff could not be released from the program because he had a mental illness. (*Id.*)
>
> Plaintiff then showed Defendant Smith three bottles of aspirin and said that if he was not released from the Start Program, he was going to take all three bottles of aspirin at once in order to commit suicide. (*Id.*, PageID.15.) Defendant Smith left Plaintiff in his cell after stating that he did not care if Plaintiff committed suicide and that he was tired of Plaintiff's "retarded ass anyway." (*Id.*) Plaintiff then took all three bottles of aspirin and "laid down to die." (*Id.*) Plaintiff states that he blacked out but woke up some time later that day. Plaintiff states that none of the prison staff members checked on him during or after this suicide attempt, nor did they investigate his mental or physical health. Plaintiff asserts that Defendant Smith is liable for failing to secure medical assistance when Plaintiff threatened to commit suicide. (*Id.*)

(*Id.* at PageID.62–65.)

Defendants now move for summary judgment based on Plaintiff's failure to exhaust his administrative remedies on his claims against them. Generally, where the non-moving party fails to respond to a motion for summary judgment,[2] "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)). In addition, because failure to exhaust is an affirmative defense upon which a defendant bears the burden of proof, *see Jones v. Bock*, 549 U.S. 199, 216 (2007), the Court must ensure that "no reasonable trier of fact could find other than for [Defendants]." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

---

[2] Defendants served their motion on Plaintiff at his current place of confinement, Marquette Branch Prison, on February 24, 2025. (ECF No. 19 at PageID.112.)

The Supreme Court has held that a prisoner properly exhausts a claim for purposes of 42 U.S.C. § 1997e(a) by complying with the prison's "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Jones*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones*, 549 U.S. at 218. A prisoner incarcerated with the MDOC must "pursue a grievance through all three steps of the grievance process [set forth in MDOC Policy Directive 03.02.130]." *Weatherspoon v. Strahan*, No. 18-2210, 2019 WL 5306842, at *1 (6th Cir. June 4, 2019). This process must be completed at all levels prior to filing an action in federal court. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

In support of their motion, Defendants attach a Step III Grievance Report for Plaintiff dated July 8, 2024, which shows the grievances arising out of ICF that Plaintiff filed during 2022 and pursued through Step III. (ECF No. 20-3.) The Step III report shows that Plaintiff pursued one grievance pertaining to his claims, ICF-22-12-1482-28b (1482 Grievance), through Step III. In the 1482 Grievance, Plaintiff alleged "that the 'Start Program' seemed to me an unconstitutional segregation program aimed at mentally-ill prisoners (me)." (*Id.* at PageID.145.) The grievance was rejected at Step I as vague. (*Id.* at PageID.146.) Plaintiff appealed the rejection to Steps II and III, but the rejection was upheld at both levels. (*Id.* at PageID.142–44.)

Having reviewed the 1482 Grievance and related documentation, I find nothing improper about the rejection on vagueness grounds. Because the MDOC may properly reject a grievance as "vague," and the rejection on this basis was arguably correct here, Plaintiff failed to properly exhaust his claims against Defendants. *See Vandiver v. Correctional Med. Servs., Inc.*, 326 F.

4

App'x 885, 891 n.3 (6th Cir. 2009) (holding that a grievance rejected as vague did not satisfy the exhaustion requirement).

Defendants have thus demonstrated that Plaintiff failed properly to exhaust his remaining claims against them. Therefore, I recommend that these claims be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (ECF No. 19) be **granted**, that Plaintiff's remaining claims be **dismissed without prejudice**, and that the Court terminate this action.

Dated: April 21, 2025                                            /s/ Sally J. Berens
                                                                  SALLY J. BERENS
                                                                  U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).